UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH ROBERT DEAN, JR., and ERIKA PRESSLEY, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br>v.<br><br>CVS PHARMACY, INC., and CVS CAREMARK CORPORATION,<br><br>                              Defendants. | Civil Action No. 14-2136 |

**MEMORANDUM**

**MCHUGH, J.**                                                                              **SEPTEMBER 6, 2017**

    This is a putative class action case on behalf of pharmacy technicians claiming that Defendants CVS Pharmacy Inc. and CVS Caremark Corporation ("CVS") forced them to complete necessary educational certifications without pay in violation of state wage protection statutes and basic contract law.  The named Plaintiffs, Keith Dean and Erika Pressley, are former CVS workers from Pennsylvania and New Jersey, respectively, and after extensive discovery, Defendants now move for summary judgement.  The governing statutes are straightforward, and despite CVS' effort to complicate the issue, the contract principles are as well, with the result that the issue comes down to the adequacy of  Plaintiffs'  proof.  As to the New Jersey action brought by Pressley, summary judgement will be granted, but as to the Pennsylvania action brought by Dean,  summary judgement will be denied.

1

1. **The Essential Undisputed Facts**

CVS requires pharmacy technicians to complete numerous trainings through an online course provider called LEARNet.  Trainees complete some online modules during their onboarding with CVS, but must complete others during their initial months as working pharmacy technicians.  When feasible, they can complete these modules in CVS stores, during regular work shifts.  However, when they cannot complete the modules at work, they must do them at home.  Unless and until necessary modules are completed, the pharmacy technicians are prevented from scheduling future in-store (paid) hours.

It is CVS corporate policy that trainees must receive payment for their time spent completing LEARNet trainings.  *See* "Work That Must Be Paid," ECF # 101-5, pp54-59.  In its supervisor training materials, CVS explicitly contemplates that employees may not be able to complete all LEARNet courses in the store.  *Id*.  The company has thus established a "payroll slip" method of timekeeping for hours completed at home:  when an employee must finish LEARNet work at home, managers are told to "[i]nstruct the colleague to submit a payroll slip to the Store Manager in the same week the training course is completed.  These slips are available on the course description page on LEARNet."  *Id*. at 59.

The parties agree that both Dean and Pressley regularly completed LEARNet training at home.  Dean estimates he completed "at least 20-30" one-hour LEARNet modules at home without pay each year.  Plf. Resp. to MTD, ECF # 17 at 4.  Pressley, though her language is more equivocal, estimates the same.  Pressley Dep. Tr. at 150.  They now seek compensation for this time, as well as statutory damages, for themselves and similarly situated pharmacy technicians.

### 2. The Central Question: "How Do I Get Paid?"

Both Dean and Pressley asked their supervisors how they would get paid for their at-home work. They received radically different answers, and those differences drive the resolution of the pending motion. In deposition testimony, Pressley said she asked her New Jersey store manager, "how do we get paid for the time that we spend training at home?" Dep. Tr. at 79. The supervisor responded: "[F]ill out the timesheets that were given" and "submit [them] to the manager." *Id.* Pressley testified that she "kn[e]w what she meant, when [the supervisor] said timesheet": the LEARNet timesheets had been distributed during onboarding training.[1] *Id.* at 80. But after onboarding training was complete – i.e., once Pressley began working in-store – she no longer had the paperwork from onboarding, so she did not complete any timesheets or otherwise log and submit records of her at-home work. She never asked her supervisor, or anyone else, for a timesheet after the conclusion of onboarding training. *Id.* at 81. "They [the timesheets] were to be given. That was the thing," she testified. *Id.*

Dean also asked his Pennsylvania supervisors how he would get paid for his LEARNet hours. Though he did not speak to his store manager about LEARNet time, he repeatedly asked Tony LaMastra, the pharmacist-in-charge at his store, "for the modules that, you know, that we have to do at home, how is it that we are getting reimbursed?" La Mastra gave vague answers to Dean, saying both "I don't know," and "you may not." Dep. Tr. at 38-42. After receiving these answers, Dean persisted: "When he initially said, 'I don't know,' that's when I proceeded with more questions and then his final answer was, 'You're not going to get paid for that.'" *Id.* at 46. "After I kept asking him, he pretty much came out and said they don't pay for time done at home." *Id.* at 44.

---

[1] She did, at least once, fill out a timesheet for LEARNet training that she did at home. *Id.* at 50-51. She was properly paid for that time.

Dean also asked Tony's work partner, Charlene, how he would be paid for his LEARNet time: "I did bring it up to her about training. She didn't really care. That's pretty much what her response was, she did not care." *Id.* at 58. Later, when Dean attempted to complete LEARNet trainings during his regular shift, he testifies that Charlene yelled at him and said "I don't care. Do [the training] on your own time." *Id*. at 61. Dean was never told that CVS policy entitled him to payment for his at-home LEARNet hours, and he was not told of a system that he could use to record those hours.

3. **Pressley's Case**

Pressley claims CVS violated the New Jersey Wage and Hour Law, breached a contract with her, and was unjustly enriched by her unpaid work. Because she could have, but did not, obtain and fill out timesheets ("payroll slips") for her hours, these claims must fail. I will address each of her arguments in turn.

*A.   The New Jersey Wage and Hour Law (NJWHL)*

The NJWHL states that "[e]xcept as otherwise provided by law, every employer shall pay the full amount of wages due to his employees at least twice during each calendar month…" N.J.S.A. 34:11-4.2. Pressley argues that this statute entitles her to payment for her at-home LEARNet time, because she was due wages for all the hours that she worked for CVS. Though the parties agree that Pressley's LEARNet time was compensable, and that she was not paid, I nonetheless cannot find that CVS violated the NJWHL. In the simplest sense, CVS did not deny Pressley wages for any hours that she worked; Pressley herself failed to ask CVS for payment for her time.

An employer cannot culpably withhold payment from an employee for hours of work that it did not know about. A company can thus only pay "the full amount of wages due to [its]

4

employees" when the employees make clear that they were on the clock. Under New Jersey law, it is a business's duty to keep accurate records of when its employees are working.[2] But almost all businesses require help from their employees in putting together such records – and they receive this help through timekeeping systems like punch-cards, log-ins, and timesheets.

CVS adopted a reasonable timekeeping system for its pharmacy technicians' LEARNet hours: it used timesheets. Pressley, however, did not fill out timesheets for her hours – and she did not otherwise attempt to report the time so that she could be paid. She did tell her supervisor that she was completing LEARNet modules at home, and she explicitly asked how to record those hours. But when the supervisor told her to log them on a timesheet, she did not do so. Pressley Dep. Tr. at 79-80. Pressley emphasizes the fact that a timesheet was not provided to her. But she knew that she could get paid for the LEARNet home hours if she logged them properly – if she did not have access to a timesheet, she should have simply asked for one.

Pressley appeared to claim at oral argument that she did not record her at-home hours because CVS prevented or discouraged her from doing so. She offers no support for this claim. She explained her lack of failure to record the hours by saying, "we never got a timesheet for work we did at home, because it was like, who would give it to us." *Id*. at 81. But she also testified that she never asked anyone for a timesheet. *Id*. Pressley was clearly comfortable enough with her supervisor to ask how she should log her at-home hours, and she has submitted absolutely no evidence that anyone at CVS dissuaded her from putting in for her time. Her

---

[2] *See* N.J. Stat. § 34:11 – 56a20 ("Every employer of employees shall keep a true and accurate record of the hours worked by each and the wages paid by him to each.") This requirement has been interpreted identically to a similar requirement under the federal Fair Labor Standards Act (FLSA). *See Rong Chen v. Century Buffet and Restaurant*, No. 09-1687, 2012 WL 113539 *7 (D.N.J. Jan. 12, 2012) ("[T]he NJWHL record-keeping, overtime compensation, and minimum wage requirements are modeled after and nearly identical to their analogous Fair Labor Standards Act regulations.").

supervisors at CVS had nothing to gain by preventing her from logging LEARNet time, and no witness or other evidence has suggested that they did so. Accordingly, no reasonable jury could find that Pressley was coerced into working without pay.

Pressley further argues that CVS's timekeeping system was facially inadequate under New Jersey law. Because the NJWHL requires employers to keep accurate records of hours worked by employees for payment purposes, Pressley argues that CVS should have known about and accounted for the hours in question. A lawful system, according to Pressley, would integrate the timestamp information provided by LEARNet into CVS's electronic shift-work timekeeping system.[3]

Pressley has not cited, nor has this Court found, any case law suggesting that such a system is necessary under New Jersey (or any other) law. Admittedly, no New Jersey court appears to have rejected Pressley's argument either. But it is not my place as a federal judge sitting in diversity, in an adjoining state, to impose the requirement that Pressley seeks. To do so would go far beyond the text of the statute and judicially specify a particular form of record keeping, replacing a timekeeping system that thousands of companies use and have used for generations: the timesheet. No case in New Jersey has challenged the use of timesheets, and other courts have made clear that employees who fail to log hours through existent, reasonable timekeeping procedures cannot prevail in wage and hour lawsuits seeking payment for those hours. *See, e.g., Brown v. ScriptPro, LLC.*, 700 F.3d 1222, 1230 (10th Cir. 2012), *White v.*

---

[3] LEARNet tracks some, but not full, information about user activity in its training modules. The program timestamps the moment at which an employee logs into the LEARNet portal and the moment at which she completes each module. However, it does not track log-out times or the amount of time an employee spends completing modules.

*Baptist Mem. Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012).[4] The language of the NJWHL does not in any respect suggest than an employer must adopt a particular means of tracking employee hours. Likewise, the language of FLSA, on which the NJWHL is based, also does not suggest that an employer must adopt a particular system for timekeeping.[5] I have found no evidence that any court has found timesheets to be an inadequate timekeeping system under the NJWHL, FLSA, or any other statute.

In effect, Pressley asks me to go far beyond the literal terms of the NJWHL, and require a seamless, integrated, computerized system. Such a method of timekeeping is undoubtedly more efficient and employee-friendly than the chore of obtaining and filling out timesheets, but it is not one that the law requires. Pressley broadly argues that because an employer has an absolute responsibility to maintain accurate records, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946),[6] it is limited in its ability to impose any responsibility on employees. This carries the principles of *Anderson* to an illogical extreme. The strongest authority Plaintiff advances is *Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 363 (2d Cir. 2011), which describes an employer's duty as "non-delegable" in the context of a case where employees were forbidden from recording overtime hours on timesheets. In that context, where there was a deliberate effort to avoid payment, the analysis makes sense. But there is a difference between a case where employees were being asked to falsify as compared to one where they were merely asked to

---

[4] *See also Fletcher v. Universal Tech. Inst., Inc.*, 2006 WL 2297041 (M.D. Fl., June 15, 2006) (failure to use time log system precluded recovery of unpaid hours under FLSA).

[5] *See* 29 CFR § 516.1 (requiring employers to keep various employee records, including records of hours worked, but specifying, "No particular order or form of records is prescribed by the regulations in this part.").

[6] Anderson was almost immediately superseded by statute. *Integrity Staffing Solutions, Inc.,v. Busk,* ___ U.S. ___, 135 S. Ct. 513 (2014).

7

inform. CVS created a legitimate, reasonable system for its employees to report at-home LEARNet training hours. There is no real evidence to suggest that employees were discoruaged from using the system; instead, Pressley simply neglected to follow it. Her failure to log her hours precludes her statutory claim for relief.

B. *Breach of Contract*

Pressley next alleges that CVS breached its contract with her by refusing to pay her the agreed-upon wage for hours she worked. CVS claims that it had no contract at all with Pressley – a position that defies reason. Although CVS's handbook and other written materials make clear that they do not establish a for-cause employment contract (the company is free to fire employees at any time, for any reason), it does not follow that there was no contract for wages already earned.[7] Employees are contractually entitled to payment for hours they have already worked at an agreed-upon wage.[8] Therefore, Pressley can fairly argue that a contract existed here.

The evidence, however, does not support Pressley's conclusion that CVS breached the contract. It was CVS policy that employees should get paid for at-home LEARNet hours. Pressley's supervisor correctly followed that policy when she told Pressley to record those hours on a timesheet. By informing Pressley that she was entitled to be paid, and telling her how to put

---

[7] It is worth noting that fifteen of the twenty-three cases cited in CVS's Motion for Summary Judgment regard wrongful termination. In such cases, the question is whether an employee enjoyed a continuing promise of employment, so long as she performed her work satisfactorily. The question here is different: whether *any* contract existed is a separate inquiry from whether that contract guaranteed future work.

[8] A contract of this type is implied, rather than express, and – like most employment contracts – it is unilateral. *See 19 Williston on Contracts* § 54:8. The employer offers to pay a certain wage for the performance of certain work, and the employee is entitled to that wage when s/he completes the work to satisfaction. *Id*. *See also Braun v. Wal-Mart Stores, Inc*., 24 A.3d 875, 939-40 (Pa. Super. Ct. 2011); *Abbot v. Schnader, Harrison, Segal & Lewis, LLP*, 805 A.2d 547, 558-59 (Pa. Super. Ct. 2002).

in for her time, CVS did what it was required to do.  Pressley's failure to ask follow-up questions, and thus determine how to put in for her time, cannot be explained as a breach of contract by CVS.  Summary judgment on this claim is thus appropriate.

C. *Unjust Enrichment*

Pressley's unjust enrichment claim fails for the same reason that her other claims fail.  CVS was willing to pay her for her at-home work, and her superior told her how to go about being paid for the work.  CVS was not unjustly enriched by Pressley's free labor, because it did not expect the labor to be free.  Pressley's actions, rather than the actions of CVS, were what caused her to not be paid.  Accordingly, this claim cannot succeed.

**4. Dean's Case**

Dean alleges that CVS violated the Pennsylvania Wage Payment and Collection Law (PWPCL), breached its contract with him, and was unjustly enriched by his work.  He has raised an issue of material fact on each count.

1. *The Pennsylvania Wage Payment and Collection Law* (PWPCL)

The PWPCL, 43 P.S. § 260.3, requires that "every employer shall pay all wages, …, due to his employees on regular paydays designated in advance by the employer."  It is largely comparable to the NJWHL, but provides a remedy only for individuals suing under a contract.  *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003).  To recover under the WPCL, a plaintiff must "aver that he was contractually entitled to compensation from wages and that he was not paid."  *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005).  As with Pressley, CVS claims that no contract existed here, and that Dean's claim fails as a result.  I disagree.  Like Pressley, there is evidence from which a jury could reasonably conclude that Dean formed an implied unilateral contract with CVS when he worked hours on

the company's behalf. Unlike Pressley, however, Dean was left unpaid through no fault of his own. Instead, it was the fault of misinformed supervisors who told Dean he had to work the hours for free.

CVS seeks to exploit the fact that there is no express contract between the parties, asking: how could Dean infer a right to payment for his LEARNet training time when his supervisor explicitly told him he must complete the work without pay? It contends that any implied contract with Dean could not possibly have covered LEARNet time, because any expectation on Dean's part that he would be paid for the time could not be reasonable in light of his supervisors' comments to the contrary. This argument fails for two reasons. First, it mischaracterizes Pennsylvania law on implied contract, and second, it would compel an absurd result.

The terms of an implied contract must be evaluated based on how an objective observer would interpret them. In the wage and hour context, this means that even where workers are told that certain time will not be compensated, a unilateral, implied contract can still entitle them to wages for that time. In *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875 (Pa. Super. Ct. 2011), *aff'd*, 630 Pa. 292, 106 A.3d 656 (Pa. 2014), the Pennsylvania Superior Court considered whether a contract entitled Wal-Mart workers to compensation for mandatory fifteen-minute work breaks that Wal-Mart supervisors had forced their employees to work through. Though the employees were clearly told to clock out during these breaks (thus indicating that they would not be paid), the court nonetheless found that they were entitled to payment, because Wal-Mart's corporate policy stated in numerous written materials, including its employee handbook, that workers were in fact to be paid for the time.[9] As in *Braun*, a jury could find Dean's expectation that he would

---

[9] The facts in this case are more compelling than those in *Braun.* Plaintiffs there sought and won the right to be paid for their break time; Dean seeks wages for time spent on required training that CVS has refused to compensate.

be paid for his LEARNet trainings to be objectively reasonable, not just in light of CVS's corporate policy, but also when viewed by the ordinary expectations of the workplace. On that score, Dean's repeated inquiries demonstrate his expectations.

Moreover, where a supervisor improperly tells a worker that he must work hours without pay, it would be a perverse result to conclude that the company could then avoid paying the worker simply because the supervisor got it wrong. Here, CVS seeks to avoid paying Dean by arguing, "Our supervisors gave you bad information, so you lose." But one cannot rescind an offer of payment that has been accepted through performance. *Abbot*, 805 A.2d 547 (Pa. Super 2002) illustrates the point. There, a law firm altered the retirement benefits of two attorneys after the benefits had vested. The Pennsylvania Superior Court found that the firm could not retroactively invalidate the benefits, because they had already been earned. It offered the following analogy: "If an employee is promised $10 per hour effective Monday, and told that her wage can be reduced at any time, and on Wednesday her wage is cut to $5 effective Thursday, her employer cannot refuse on pay day to give her $10 per hour for her work on Monday through Wednesday." *Abbott*, 805 A.2d at 559 (*quoting Amatuzio v. Gandalf Systems Corp.*, 994 F.Supp. 253, 266 (D.N.J. 1998)).

Pennsylvania appellate decisions have also recognized that accepting the benefit of another's service creates an obligation notwithstanding an attempt to repudiate it: "A promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent *or* avails himself of the service." *Home Protection Building & Loan Association*, 17 A.2d 755, 757 (Pa. Super. 1941) (emphasis added). *Accord, Braun,* 24 A.3d at 942; *Martin v. Little, Brown, and Co.,* 450 A.2d 984, 987 (Pa. Super. Ct. 1981). And

realistically, one cannot be deemed to have gratuitously offered his services where completing the training modules was a prerequisite to his ability to work. *Compare Brown, supra,* 450 A.2d at 988.

These same principles apply here. A jury could reasonably find that CVS offered – through its job application procedure, employment materials, and employee statements – to pay Dean a certain hourly wage for his work as a pharmacy technician, and that Dean accepted that offer through his performance of pharmacy technician duties, which included the completion of LEARNet trainings. His supervisors' ill-informed comments are not an absolute legal defense protecting CVS from liability under that implied contract.

2. *Breach of Contract*

The analysis for this claim is nearly identical to the analysis above. Issues of material fact exist about whether CVS breached its implied, unilateral contract with Dean. Accordingly, summary judgment for this claim is denied.

3. *Unjust Enrichment*

Dean has pled this equitable claim in the alternative, as a backstop for his statutory and common law claims. In Pennsylvania, "[a] cause of action for unjust enrichment is a claim by which the plaintiff seeks restitution for benefits conferred on and retained [by] a defendant who offered no compensation in circumstances where compensation was reasonably expected." *White v. Conestoga Title Ins. Co.*, 617 Pa. 498, 527 n.6, 53 A.3d 720, 738, n.6 (Pa. 2012) (citing *American & Foreign Ins. Co. v. Jerry's Sports Center, Inc.*, 2 A.3d 526, 537 n.7 (Pa. 2010)). The facts here would appear to present a textbook example of such a claim. Dean clearly conferred a benefit on CVS by working unpaid hours at home. CVS clearly retained that benefit, and there is evidence that it expressly refused to compensate Dean for his work. CVS's own

policy, Dean's repeated inquiries, and the simple realities of the labor market support the conclusion that Dean would reasonably expect compensation for the required work he completed at home. CVS' defense to this claim principally consists of a conclusory argument that there was nothing unjust about Dean not being compensated, an argument that lacks any compelling foundation.

Unjust enrichment is typically advanced as an equitable claim, but can parallel a theory of recovery rooted in law. *Dastgheib v.Genentech, Inc.* 457 F. Supp. 2d. 536 (E.D. Pa. 2006) (Robreno, J.). For present purposes, there is no need to decide whether the nature of the claim is predominately legal in nature, such that it should be decided by a jury, or predominately equitable in nature, and either submitted for an advisory jury verdict under FRCP 39(c), or reserved for presentation to the court if the jury finds no legal remedy. To resolve this pending motion, I need only decide whether there are facts of record that would support recovery under such a theory, and I conclude that there are.

    /s/ Gerald Austin McHugh
United States District Judge